STATE OF MINNESOTA *vs.* SAMUEL LESLIE.

July 5, 1883.

| 30    533|
|f82    473|

County Roads—Award of Damages held Definite Enough.—Where county commissioners, in laying out a county road, in their award specify the damages to each of several tracts of land, describing them, and then state, "and in all other cases the benefits are equal to the damages," it is sufficient as to all tracts not specifically described.

**Same—When Road through Inclosed Land becomes Open—Removal of Fences.**—Where such a road is laid out through inclosed lands, it does not become a public highway through such lands, open to public use, and so that the owner shall be guilty of a public offence by keeping up and repairing the fences, upon his omission to remove the fences for 20 days after the notice to remove them provided by Gen. St. 1878, c. 13, § 41. If he fail to remove the fences, or to acquiesce in their removal by others, some action by the supervisors of the town, which may serve to show that they have acted under section 53, same chapter, and as notice to the public that the right of the public to use the road has commenced, is necessary.

Complaint was made against defendant, before a justice of the peace, for obstructing a highway by building a wire fence along and across it. He pleaded not guilty and title to the land in question in himself. The question of title coming into dispute upon the evidence, the justice certified the case to the district court for Waseca county, and defendant was thereupon tried in that court, before *Buckham, J.,* and a jury, and convicted. For the purposes of the trial the parties made a written stipulation as to most of the facts. A new trial was refused, and the defendant appealed.

*Lewis Brownell* and *Wm. R. Kinder,* for appellant.

*M. D. L. Collester,* for the State.

GILFILLAN, C. J. Prosecution for obstructing a highway. The only controversy is as to the legal existence of the highway. It is admitted that the board of county commissioners of Waseca county, upon proper application, made an order laying out a county road (the highway in controversy) in the towns of Otisco and Woodville, in said county; the only exception to the proceedings, up to the order, being that there was no assessment of defendant's damages. The commissioners made an award, in which they specify the damages to each of several tracts described, giving the names of the owners, and then state, "and in all other cases the benefits are equal to the damages." No express mention is made of the lands of defendant, nor of four others through whose lands the road runs. It is not disputed that it was proper for the commissioners, in their award, to offset the benefits to each owner against the damages, and, in case they were equal, to allow him nothing. But it is claimed that the

award should describe each tract, or name the owner, and that a general statement, "in all other cases the benefits are equal to the damages," is not enough. Undoubtedly it should appear from the award that the commissioners considered and passed on the damages to each tract through which the road runs. But this does appear by the general clause above quoted from the award, where no damages are allowed, for the reason that the benefits are equal to them. The statute does not require any greater particularity, and, in such cases, we do not see why it should. Of course it must name the owner, or describe the tract, where damages are allowed. We consider the award to have been sufficient.

The stipulation of facts states that there was no appeal from the order of the county commissioners, and "thereafter said road was duly ordered open by the supervisors of the town of Otisco, where said defendant's land is located, and he was duly notified to open the same on or about July 1, 1881, but refused and still refuses to do so." During all the time aforesaid defendant's land through which the road runs was inclosed and fenced in, and he has kept and still keeps it fenced in, and the offence complained of is repairing said fence on his said land, on (across) the line of said road, after the foregoing proceedings were had.

Gen. St. 1878, *c. 13, § 64,* provides: "Every road laid out by the proper authorities, as provided for in this chapter, from which no appeal has been taken within the time limited for taking such appeal, is hereby declared a public highway to all intents and purposes." What is included in the "laying out" of a road, and when it is to be deemed "laid out," so as to be a highway to all intents and purposes, must be ascertained by referring to other portions of the the statute. In the case of a county road, after the petition of the freeholders and the report of the committee of the board of county commissioners to examine the proposed location, "At the next meeting of the board of commissioners they shall proceed to determine the prayer of such petition; and such board shall declare it granted if a majority of the board so agree, and shall direct the auditor to notify the supervisors of the several towns in which such road is located or established, or change or vacation is made, when such su-

pervisors will cause to be opened so much of such highway as lies in their respective towns." Section 53, same chapter. And section 41: "Whenever the supervisors or commissioners have laid out any public road through any inclosed, cultivated, or improved lands, in conformity with the provisions of this chapter, and their decision has not been appealed from, they shall give the owner or occupant of the land through which the road is laid twenty days' notice in writing to remove his fences; and if such owner does not remove his fences within twenty days, the supervisors shall cause such fences to be removed, and direct the road to be opened and worked."

It is apparent from these provisions that a county road does not in all cases become a public highway, to all intents and purposes, open to the use of the public, immediately upon the order of the county commissioners granting the prayer of the petition. The statute contemplates that, in some cases at least, something further remains to be done, to wit, that the road shall be opened by the supervisors of the town. It is likely that this requirement does not apply to a case where, from the situation of the land through which the road runs, there is no necessity for further action, as where the road is already open by reason of the land being uninclosed, uncultivated, and unimproved, or where the owners voluntarily remove the inclosures, either upon notice or without notice, and so open the road, or acquiesce in their removal by others. When action by the supervisors is necessary, it is for them to determine when they will take it and open the road to public use. Private persons cannot do this. The supervisors are restrained so that they cannot cause an inclosure to be opened between the first day of April and first day of October. At other seasons. they must first give the owner or occupant an opportunity to open the inclosure himself. This is a privilege given him for his protection, so that the removing of the fences may be done with least prejudice to himself. It is not made his duty to remove the fences; he is merely given the opportunity. Nor do we think the notice and the expiring of the time given him to remove the fences is, in case of his neglect to remove them, equivalent to an opening of the road to public use. For the statute (section 41) provides that "if such owner does not remove his fences within twenty days

the supervisors shall cause such fences to be removed, and *direct the road to be opened* and worked;" so that, though 20 days have elapsed, and the owner has failed to remove the fences, the road is not yet regarded as opened. Action by the supervisors is still required. We do not suppose that a formal order or direction by the supervisors that the road be opened is necessary. But some action by them which may serve to show that they have acted under the direction of section 53, and as notice to the public that the right of the public to use the road has commenced, would seem necessary. Probably, removing the fences, and thus actually throwing the road open to public use, would be sufficient. These views are sustained by *Hunter* v. *Jones,* 13 Minn. 282, (307.) As we understand the stipulation, no action was taken by the supervisors after giving defendant notice to open the road, and it therefore did not become a public highway so that his repairing the fences was a public offence.

Order reversed, and new trial ordered.